## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **ERIC FISCHBACH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.  2:25-cv-** |
| | ) | |
| **T-MOBILE USA, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Eric Fischbach, by and through undersigned counsel, hereby complains against Defendant T-Mobile USA, Inc. and alleges the following:

## INTRODUCTION

1.      This action arises because Plaintiff alleges that he was discriminated against and constructively discharged on March 22, 2023, by the Defendant, because of his disability in violation of the Americans with Disabilities Act of 1990, as amended ("ADA") and Maine Human Rights Act ("MHRA") as well as violation of the Maine Family Medical Leave Law ("MFMLL").

## THE PARTIES

2.      Plaintiff Eric Fischbarch ("Plaintiff" or "Fischbach") is an individual residing in the Town of Cape Nedick, County of York, and State of Maine.

3.      Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile") is wireless telephone and data communication service provider.

4.     T-Mobile employed Fischbach at all times relevant to this Complaint.

5.     T-Mobile has more than 500 employees on its payroll in each of 20 or more calendar weeks during the current and/or preceding calendar year.

**JURISDICTION AND VENUE**

6.     Prior to filing this Complaint, Fischbach filed a charge of discrimination with the Maine Human Rights Commission ("MHRC") and the EEOC.  Taylor received a notice of right to sue letter from the Maine Human Rights Commission on January 16, 2025 and from the EEOC on February 15, 2025.

7.     Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in Southern Maine.

8.     The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

**BACKGROUND FACTS**

9.     Fishbach is a 22-year veteran of active navel service with a 100% disabled rating from the VA.

10.     Fischbach began working for Nextel in 1999.

11.     After the terrorist attacks on  9/11, Fishbach reenlisted in active duty and Nextel provided him a military leave of absence.

12.     Nextel was acquired by Sprint Mobile. Sprint maintained Fischbach's military leave of absence.

13.     In 2016, Fischbach became the Sourcing Manager for the Procurement Team in 2016.

14.     Sprint merged with T-Mobile in April of 2020.

2

15.     There were significant layoffs after the merger, but Fischbach was not subject to the reduction in force.

16.     Fischbach was transferred to a T-Mobile team as a Technology Sourcing Manager working under the Director, David Hale.

17.     Fischbach had a record of successful measurable outcomes working as a Technology Sourcing Manager as evidenced by his 2021 mid-year review when he received an "Advanced" ranking and deemed a "High Level Individual Contributor" by his direct supervisor, Jason Reigel.

18.     In August of 2021 Fischbach was experiencing significant pain due to a long-standing back injury. After following up with his medical providers, he was scheduled for and underwent surgery in October of 2021.

19.     Fischback took a medical leave of absence for surgery.

20.     Due to complications with the back surgery, Fischbach had to undergo another surgery in November 2021.

21.     On February 11, 2022, Fischbach received his 2021 year-end review while out on medical leave. During the end-of-year review, Reigel informed Fischbach that he received a poor evaluation rating and as a result of that rating he would not receive an increase in his base salary and would not receive his full bonus.

22.     Fischbach asked his manager if the poor rating was due to the medical leave of absence given that in his 2021 mid-year review he was rated highly, but after going out on medical leave he was rated poorly.

3

23.    On February 23, 2022, Fischbach met with his Director, Hale. During the meeting Hale was derogatory toward Fischbach. Fischbach informed Hale that he would seek employment with a different team within T-Mobile. Fischbach explained that he felt it was Hale's responsibility to ensure that management are not treating employees badly because of a medical condition or because of the need for a medical leave of absence.

24.    On February 24, 2023, Hale asked that Fischbach reconsider remaining on his team and offered to provide Fischbach with mentorship throughout the year.

25.    During the next 12 months Hale did not provide Fischbach with any mentorship, rarely communicated with Fischbach, and did not respond to Fischbach's emails. Fischbach understood that Hale did not intend to help Fischbach grow professionally contrary to what he said before.

26.    On February 28, 2022, Fischbach met with Hale's manager, Senior Director Olga Perlman.

27.    During this meeting, Fischbach explained to Perlman that he requested the meeting to discuss what occurred before and after the medical leave and how he believed he was ranked poorly because of his medical condition and need for medical leave. He also explained the negative financial impact this had on him.

28.    On March 3, 2022, Fischbach created a response to his 2021 end-of-year review and submitted it to Marilyn Keys in Human Resources.

29.    The following year was exceedingly difficult with two interim managers and a newly appointed manager, Kelly Campbell.

30.    Campbell was very critical of Fischbach and scrutinized his work. Campbell spoke to Fischbach in an unprofessional and condescending manner during meetings with his colleagues.

31.    The manner in which Campbell spoke to Fischbach during these team meetings caused a colleague to reach out to Fischbach asking why Campbell treated him so poorly. Fischbach explained that she treated him that way regularly.

32.    In October of 2022, Fischbach's colleague Christina Davis informed Fischbach that she became aware that Fischbach was being targeted by his manager to be set up for failure so that he would be terminated for performance deficiencies.

33.    On October 31, 2022, Fischbach met with Human Resources to report was he had been told and how he had been treated.

34.    Following the interview Fischbach believes Human Resources informed Hale of his complaint and interviewed Hale.

35.    Fischbach had a meeting with Hale and Campbell to discuss what he shared with Human Resources. In response Hald told Fischbach that he "always plays the victim." Hale then asked Campbell if she had anything that she'd like to add to which she declined.

36.    At the end of the year Campbell directed Fischbach to complete 5 new contracts before year end. Fischbach was assigned an additional contract to

complete before year end bringing the total expectation to closing 6 contracts in two months.

37.    Fischbach was able to successfully complete 5 of the 6 contracts by year end.

38.    Campbell did not provide any positive feedback on the 5 contracts he was able to complete and focused only on the contract he was not able to complete.

39.    Fischbach explained that he was unable to complete the 6th contract because he believed T-Mobile was overpaying this supplier for a number of years and he was trying to negotiate some cost reductions. After meeting with Hale and Campbell regarding this issue he was granted an extension.

40.    To complete the contract Fischbach required additional material from the supplier to conduct his analysis. Fischbach had not received the additional material and the extension deadline was approaching.

41.    Campbell repeatedly questioned if Fischbach was going to be able to meet his deadline despite keeping her apprised of the progress every step of the way.

42.    Eventually, Fishbach collaborated with in-house counsel and collectively they were able to incorporate language into the contract that would allow Fischbach to reopen the contract after completing the analysis and potentially obtain some cost reductions.

43.    Incredulously, Campbell asked Fischbach if he really believed he could get the supplier to approve the contract with the conditional language. Fischbach

explained that he believed he could get the contract approved based on his good working relationship with the supplier. Campbell laughed in response stating that she did not believe he would get approval, but that she has been wrong before.

44.    Fischbach was able to get the contract approved with the conditional language in time for the extension deadline. He received no acknowledgement from his manager.

45.    The number of contacts Fischbach completed annually was as follows:

FY 2016 – 35 Contracts Completed. (This was Fischbach's first year with Sprint and this represents 6-months of work)
FY 2017 – 90 Contracts Completed
FY 2018 – 81 Contracts Completed
FY 2019 – 73 Contracts Completed
FY 2020 – 53 Contracts Completed
FY 2021 – 56 Contracts Completed.

46.    However, in 2022, Fischbach only completed 10 contracts because his manager only assigned 10 contracts to him.

47.    Fischbach believes the number of contracts he was assigned was done so to intentionally set him up for failure as a reason to terminate based on performance.

48.    In 2023, Fischbach completed 12 contracts within two months.

49.    On February 2, 2023, Fischbach had an interview with hiring manager Kathy Chaale, for a lateral transfer he applied to as Senior Manager, Contract Negotiation (REQ218348).

50.     Chaale and Fischbach had spoken on a couple of occasions prior to the interview and seemed to get along well. Fischbach believed the interview went very well and he felt strongly that he would be chosen for the position.

51.     Fischbach met all of the requirements of the position and was already a T-Mobile employee and familiar with the organization.

52.     Fischbach later learned that he was not chosen for the position. He reached out to Chaale requesting feedback on what he could do to make himself a better candidate for future opportunities, but she would not respond to his inquiries.

53.     On February 7, 2023, Fischbach was placed on a performance improvement plan ("PIP") just before his 2022 end-of-year review.

54.     Fischbach asked Campbell if this was going to increase his pay increase or bonus and she said she mad the recommendation for bonuses in January and of court the PIP would affect that.

55.     Fischbach asked her why she delayed providing him with performance feedback and the PIP if she knew she was going to put him on the PIP in January. Campbell did not have an answer.

56.     On the same day he was placed on a PIP, Fischbach contacted a former manager that he worked under prior to the merger and inquired whether he was a difficult or bad employee. The manager responded that Fischbach was a great employed and he would not have nominated Fischbach for the Sprintacular award had he been substandard or bad.

57.    During the end-of-year review discussion, Fischbach received no annual pay increase and learned he would not be receiving his full bonus allocation, only 50% of it.

58.    On February 8, 2022, Fischbach created a response to the PIP and submitted it to Dana Monroe, Human Resources.

59.    On March 3, 2022, Fischbach submitted his issues and concerns with T-Mobile's Ethics Hotline.

60.    On March 8, 2023, Fischbach informed his manager that he was giving his notice and his last day would be March 22, 2023.

61.    Fischbach was constructively discharged.

62.    T-Mobile discriminated against Fischbach because of his disability in violation of the ADA and the Maine Human Rights Commission.

63.    T-Mobile retaliated against Fischbach for complaining of discrimination based on his disability.

64.    T-Mobile discriminated and retaliated against Fischbach for taking a medical leave of absence in violation of the Family Medical Leave Act and Maine Family Medical Leave law.

## COUNT I – DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (29 U.S.C. § 621 *et seq.*)

65.    Plaintiff repeats the allegations contained in Paragraphs 1 through 64 as if fully stated herein.

66.    Fischbach was a qualified individual with a disability within the meaning of the ADA.

67.    Defendant regarded Fischbach as having a disability that substantially impaired her ability to work, perform daily activities, and sleep. Fischbach was disabled as determined by the VA.

68.    Defendant discriminated against Fischbach because of his disability and need for medical leave.

69.    As a result of Defendant's disability discrimination and willful violation of the ADA, Fischbach has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

70.    Defendant recklessly, knowingly, and/or willfully discriminated against Fischbach in violation of the ADA and therefore Plaintiff is entitled to liquidated and punitive damages.

WHEREFORE, Plaintiff Eric Fischbach requests that the Court award him damages for Defendant's violation(s) of the ADA, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT II – RETALIATION IN VIOLATION OF THE ADA
### (29 U.S.C. § 621 *et seq.*)

71.     Plaintiff repeats the allegations contain in Paragraphs 1 through 70 as if fully stated herein.

72.     The ADA prohibits an employer from taking adverse action against an employee because they exercised their rights under the Americans with Disabilities Act, such as requesting a reasonable accommodation for their disability, filing a complaint about disability discrimination, or simply informing their employer about their disability.

73.     T-Mobile retaliated against Fischbach after receiving notice of disability and need for medical leave of absence by unfairly evaluating him with a poor rating on two occasions thus negatively impacting his annual bonus and annual pay increase as well as refusing to hire him for a lateral transfer. T-Mobile also retaliated against Fischbach by placing him on PIP.

74.     Defendant recklessly, knowingly, and/or willfully retaliated against Fischbach in violation of the ADA and therefore Plaintiff is entitled to liquidated and punitive damages.

WHEREFORE, Plaintiff Eric Fischbach requests that the Court award him damages for Defendant's violation(s) of the ADA, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT III – DISABILITY DISCRIMINATION IN VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq*)

75.    Plaintiff repeats the allegations contained in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

76.    For the reasons set forth in Count I above, unlawful discrimination has taken place within the meaning of the Maine Human Rights Act.

77.    As a result of Defendant's discriminatory actions, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, liquidated and punitive damages, attorney's fees, costs and expenses.

WHEREFORE, Eric Fischbach respectfully requests that the Court enter judgment in his favor and against Defendant and award him compensatory damages, lost wages, liquidated damages, punitive damages, reasonable costs and attorney's fees, pre- and post-judgment interest, and such further relief the Court may deem proper.

## COUNT IV – RETALIATION IN VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq*)

78.    Plaintiff repeats the allegations contained in Paragraphs 1 through 77 of the Complaint as if fully set forth herein.

79.    For the reasons set forth in Count II above, unlawful retaliation has taken place within the meaning of the Maine Human Rights Act.

80.    As a result of Defendant's discriminatory actions, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits,

compensatory damages including emotional pain and suffering and lost enjoyment of life, liquidated and punitive damages, attorney's fees, costs and expenses.

WHEREFORE, Eric Fischbach respectfully requests that the Court enter judgment in his favor and against Defendant and award him compensatory damages, lost wages, liquidated damages, punitive damages, reasonable costs and attorney's fees, pre- and post-judgment interest, and such further relief the Court may deem proper.

## COUNT V – FMLA RETALIATION AND DISCRIMINATION
### 29 U.S.C. § 2615(a)(1)

81.    Plaintiff repeats the allegations contained in Paragraphs 1 through 79 as if fully stated herein.

82.    Fischbach was eligible and qualified for leave under the FMLA.

83.    Fischbach provided Defendant with appropriate notice of his need to take leave under the FMLA. After Fischbach went out on leave in October 2021, T-Mobile retaliated against Fischbach by repeatedly unfairly rating him as poor on evaluations resulting in no pay increase and a lower bonus as well as placing him on PIP, decreasing the number of contracts assigned to him, and deciding not to hire him for the lateral position he applied to.

84.    As a result of Defendant's FMLA retaliation, Fischbach has suffered and is entitled to damages, including but not limited to lost wages and benefits, front pay, attorney's fees, costs, and expenses.

85.    Defendant's violation of the FMLA was willful, justifying an award of liquidated damages under the FMLA.

WHEREFORE, Plaintiff Eric Fischbach requests that the Court award him damages for Defendant's violation of the FMLA in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT VI – VIOLATIONS OF THE MAINE FAMILY MEDICAL LEAVE LAW
### 26 M.R.S. § 847

86.    Plaintiff repeats the allegations contained in Paragraphs 1 through 85 as if fully stated herein.

87.    As set forth more fully in Count V above, Defendant's conduct amounts to a violation of the Maine FMLL.

88.    As a result of Defendant's violation of the MFMLL, Fischbach has suffered and is entitled to damages, including but not limited to lost wages and benefits, front pay, attorney's fees, costs, and expenses.

89.    Defendant's violation of the MFMLL was willful, justifying an award of liquidated damages under the MFMLL. Alternatively, Plaintiff is entitled to liquidated damages of $100 per day beginning on the date that Fischbach suffered retaliation as a result of the protected leave.

WHEREFORE, Plaintiff Eric Fischbach requests that the Court award him damages for Defendant's violation of the MFMLL in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## JURY TRIAL DEMAND

Plaintiff Eric Fischbach hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Respectfully submitted,


Dated:  April 15, 2025                    */s/ Laura H. White*
                                          _____
                                          Laura H. White, Bar No. 4025
                                          *Attorney for Plaintiff*
                                          WHITE & QUINLAN, LLC
                                          62 Portland Rd., Suite 21
                                          Kennebunk, ME 04043
                                          (207) 502-7484
                                          *lwhite@whiteandquinlan.com*

                                          */s/ Danielle M. Quinlan*
                                          _____
                                          Danielle M. Quinlan, Bar No. 5480
                                          *Attorney for Plaintiff*
                                          WHITE & QUINLAN, LLC
                                          62 Portland Rd., Suite 21
                                          Kennebunk, ME 04043
                                          (207) 502-7484
                                          *dquinlan@whiteandquinlan.com*